UNITED STATES, Appellee

v.

DONALD A. WILSON, Airman Apprentice, U. S. Navy, Appellant

5 USCMA 783, 19 CMR 79

No. 5706

Decided May 13, 1955

CDR James A. Brough, USN, for Appellant.
CAPT Carl G. Lutz, USMC, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of three violations of the Uniform Code of Military Justice. One of these, which is the only offense before this Court, was assault with intent to commit voluntary manslaughter. On appeal, a board of review made new findings, and affirmed the conviction as an assault with a dangerous weapon. The accused now contends that the law officer's instructions on self-defense were prejudicially inadequate. Those instructions are as follows:

". . . with regard to the elements of self defense, the court is advised that self defense may be resorted to in order to repel force but not to inflict revenge. It is a defensive not an offensive act and it cannot exceed the bounds of mere protection of ones self."

On Christmas Eve, 1953, the accused was at the Bar Miami in Oppama, Japan. Johnny Pierce was also at the bar. He did not know the accused but he had heard of him. For reasons not shown in the record, Pierce provoked a fist fight with the accused. The accused was badly beaten. Pierce told him "to leave and not to come back." The accused departed. According to his testimony at the trial, he stopped at a photography shop, and examined himself in the mirror. He saw that his face "was a mass of blood," and he "got kind of angry right there." He sought out three friends. He told them what happened, and requested them to "come down there with me and make sure it stays clean." They agreed.

The accused and his companions returned to the bar. Before entering, he told them, "don't you guys get into anything unless somebody else jumps me." As soon as the accused entered, Pierce jumped from his seat at the bar and the two started fighting. The fight continued out into the street, with the accused getting much the worst of it. No one else joined in the fight. After a while, Pierce's friend

784

interceded. He told Pierce to stop because the accused was "done." Pierce was led to an alleyway, and the accused was carried from the field by his own friends. Pierce returned to the bar. He discovered that he was bleeding. He had a wound extending from his left ear to about his waist. Two other "slight" wounds were on the left shoulder. He had no wounds before the second fight with the accused.

Pierce was taken to the hospital and remained for thirteen days. At the trial, which occurred almost two months later, he still had a visible scar from the major wound. He recalled that during the fight he felt "a kind of sting on my body." As for the accused, he testified that he suffered a fractured skull, for which he was hospitalized.

Two persons present at the bar when the second fight occurred testified for the prosecution. One said that in the course of the fight, he saw what "looked like" a knife in the accused's hand. The other said that he saw "an object about five inches long in the palm" of the accused's hand.

In his own testimony, the accused consistently denied that he used a knife in the fight. In corroboration, several persons testified that they saw the second fight, but did not see a knife in the accused's possession. Additionally, some evidence was presented which tended to show that when Pierce returned to the bar he did not appear to be hurt. Finally, in his closing argument, the accused's counsel contended as follows:

". . . Now the prosecution would have you believe that as a result of the second fight Pearce received his wound. The prosecution will probably tell you that witnesses testified that prior to the second fight Pearce wasn't cut. . . . Now after the second fight the accused was helped off by his friends. . . . the accused testified definitely that Pearce was sitting at the bar and wasn't cut. Gatti testified to the best of his knowledge that Pearce was in the bar with him for some time. . . . The defense respectfully submits that the accused and the witness Pearce may or may not have been cut by this knife. We have only the testimony of a few people who say that he was cut definitely on Christmas Eve. Since the witness himself and a very good friend of his and neither one of them supposedly knew that he was cut until after they were going up the hill some place and to the other fellows house and then they proceeded to sick bay. We have no testimony as to what transpired at sick bay or what happened after that. We have only the testimony of these two friends. On the other hand we have the testimony of disinterested persons who are not a friend of the accused, at least by Gatti, that Pearce was in the bar after the second fight. The defense respectfully submits that while this vast amount of testimony is being adduced today, it may seem to indicate the accused's guilt. But we feel it has not precluded other possibilities of this wound being inflicted on Pearce."

Self-defense is a plea of necessity. Therefore, it is generally not available to one who engages with another in mutual combat. Neither does it shield from criminal responsibility one who uses more force than he believes to be reasonably necessary to protect himself from injury.

In essence, the accused's testimony is an admission that he returned to the bar for the purpose of fighting with Pierce. He even took along his friends to insure that the fight was "clean." However, assuming that the accused's testimony is not tantamount to a judicial confession of engaging in mutual combat, and that Pierce was an aggressor committing an unlawful assault, the accused was justified in using only such force as seemed to him to be necessary to protect himself from harm. 4 Am Jur, Assault and Battery, § 38. Whether that included the use of a knife would, of course, be a question of fact for the court-martial to decide under proper instructions from the law offi-

cer. See: United States v. Weems, 3 USCMA 469, 13 CMR 25. The instructions here were inadequate for that purpose, but on the evidence and on the theory relied upon by the accused, the law officer's error did not prejudice the accused.

The evidence must show "a sound theory of self-defense" in order to warrant an appropriate instruction. United States v. Ginn, 1 USCMA 453, 457, 4 CMR 45. No such theory appears here. The accused did not contend that it seemed reasonable to him to use a knife in defense of his person. Rather, he strenuously disputed the fact that it was he who inflicted the injuries on Pierce. In his own testimony, he categorically denied that he carried a knife, or that he used one in the course of the fight. He produced witnesses to testify that they saw the fight, but that they did not see him with a knife. He presented evidence tending to show that after the fight Pierce appeared to be unharmed. Finally, his counsel forcefully argued that the evidence did not preclude other "possibilities of this wound being inflicted on Pearce."

Indisputably, therefore, self-defense was not raised by the evidence and it was not relied upon by the accused. On the contrary, he disclaimed all responsibility for the injuries to Pierce. This disclaimer is just the opposite of the contention advanced in a plea of self-defense. Under such a plea the accused admits inflicting the injury, but contends that he did so because it was necessary to protect himself from injury. On the evidence, therefore, there was no need of any instruction on self-defense. Consequently, the inadequacies of the instruction here did not prejudice the accused.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.