UNITED STATES, Appellee

v

BYRON B. RINE, Jr., Staff Sergeant, U. S. Air Force, Appellant

18 USCMA 421, 40 CMR 133

No. 21,684

July 3, 1969

Colonel Bertram Jacobson argued the cause for Appellant, Accused. With him on the brief was Colonel Joseph E. Krysakowski.

Major Frank T. Moniz argued the cause for Appellee, United States. With him on the brief was Colonel James R. Thorn.

## Opinion of the Court

QUINN, Chief Judge:

A chance meeting outside the Lucky Seven Bar in Udorn, Thailand, between the accused and Sergeant James Gold

left Gold dead and the accused facing a charge of murder. A general court-martial convened at Clark Air Base, Republic of the Philippines, convicted the accused of the lesser offense of voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919, and sentenced him to dishonorable discharge and confinement at hard labor for five years. On this appeal, the accused contends he was prejudiced by the law officer's denial of a defense request to instruct on self-defense.

We need not review the law and the literature on the right to take the life of another in defense of one's own person. See United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388. Also, we can disregard an apparent misapprehension by the law officer as to the necessity for instructions on inconsistent defenses,[1] and directly consider the evidence to determine if it reasonably raised self-defense as an issue.

Three persons testified about the fatal encounter. Two of these were Thai nationals, who testified as Government witnesses, and the third was the accused. All agree the accused was standing on the side of the road in front of the Lucky Seven Bar at about eleven o'clock on the night of March 23, 1968. According to the accused, he was considering whether to return to the Air Base. Sergeant Gold came down the road from another bar. One of the Thai witnesses, Prapan Kulton, testified Gold was carrying a beer bottle. As he came to where the accused stood, he either "bumped into" the accused, as the accused testified, or he "brushed shoulders" with the accused, as the

Thais testified. What followed this contact is not clear. Prapan went into the Blue Heaven Bar, which was "beside" the Lucky Seven, and the other witness, Han Singbandit, admitted on cross-examination that he was "too far away" to see everything. At any rate, within the next three to five minutes, as estimated by the accused and Prapan, the accused and Gold stood near a pond at the roadside adjacent to the Lucky Seven Bar. Prapan had come out of the Blue Heaven Bar. Although there was enough light in the area to see "clearly," he was about thirty meters away which was "too far" to enable him to "take a good look" at everything that transpired. Prapan further testified that Han was "standing close to" him in front of the Blue Heaven Bar, and he could not indicate the distance in the courtroom because the room was "too narrow" and Han "was standing far from Sergeant Rine and" Gold.

The accused testified he tried to talk to Gold, but Gold appeared to be "dopey." The Thai witnesses agree the accused and Gold appeared to be talking. The accused maintained that, as he faced Gold, he stood "with his palms down and hands open" and he did not have the knife out. Looking directly at Gold, he said: "Look here, man, we're both clean, let's—"; he never finished the sentence. Suddenly he was struck on the side of the head. The blow was so severe and so "sharp" that he thought "part of . . . [his] head was falling off." Both Government witnesses testified they saw nothing in Gold's hands at this moment of time, but Prapan admitted he had seen Gold with a beer bottle when he first met the accused and Han

---

[1] Individual defense counsel contended the evidence raised two defenses, self-defense and that the accused was in a "mentally incompetent state" resulting from a severe blow on the head administered by Gold. The law officer apparently believed these theories of defense were inconsistent and that instructions were not required on inconsistent defenses. However, inconsistent defenses can be interposed in a criminal case. United States v Snyder, 6 USCMA 692, 700, 21 CMR 14; United States v Harbin, 377 F2d 78 (CA4th Cir) (1967); Whittaker v United States, 281 F2d 631 (CA DC Cir) (1960); cf. United States v Farrington, 14 USCMA 614, 34 CMR 394, where defense counsel specifically requested that no instruction be given on self-defense to avoid impairment of the defense of alibi.

testified he saw Gold carrying a beer bottle just before he saw him with the accused at the pond. Also, Han testified he saw Gold throw a beer bottle at the accused when the accused finally ran from the scene.

The Government witnesses and the accused agree that the accused fell backward into the pond. There are some differences between Han and Prapan as to what then occurred, but the most direct evidence bearing upon the issue of self-defense comes from the accused and Prapan. The accused testified that he was dazed from the blow he received. As he "attempted to get . . . back up" he saw "an image of a man . . . in front" of him. He got up and went "back to this man." (Emphasis supplied.) Prapan testified that when the accused "got himself to his feet" he "rushed to" Gold. The accused admitted that as he got "back up," he withdrew the knife from his pocket. Asked whether he had opened the knife, he answered: "No, sir, I didn't." Asked further whether he had stabbed "anybody with that knife" on the day of the incident he replied: "No, sir, I never stabbed anyone at any time." Later, under questioning by a court member, he reiterated that as far as he knew he "didn't stab anyone."

A plea of self-defense is "in the nature of the admission of an assault and an avoidance of guilt because of the excuse . . . that such assault was in . . . [the accused's] own necessary defense." United States v Duckworth, 13 USCMA 515, 520, 33 CMR 47; see also United States v Wilson, 5 USCMA 783, 786, 19 CMR 79. Consequently, when an accused expressly and categorically denies he was in any way responsible for, or connected with, injury to the victim, his testimony constitutes not a plea in confession and avoidance, but reliance merely "upon the general issue" that he is not guilty. United States v Duckworth, supra, at page 521; United States v Wilson, supra; United States v Clansey, 7 USCMA 230, 22 CMR 20. As we read the accused's testimony, he un-

qualifiedly insisted that he did not stab Gold. On his own admission, therefore, he was not motivated by any desire to protect his person. The law officer correctly ruled that self-defense was not in issue.

Sometime after the incident with Sergeant Gold, the accused appeared at the base dispensary. He was examined by a doctor. It appeared that he had a "cut or torn" ear and two superficial scratches, one on his chest, which extended for approximately fourteen inches, and the other in the back. Focusing on these, appellate defense counsel argue they were inflicted by Gold, and they constituted adequate provocation for self-defense. The difficulty with the argument is that it disregards the requirement that "one must in fact . . . fear imminent death or serious injury before he is entitled to resort to a dangerous weapon." United States v Regalado, 13 USCMA 480, 484, 33 CMR 12. Disregarding the accused's repeated denial that he exposed the █ blade of the knife, and █ giving credit to the testimony that he actually held an open knife in his hand, it nowhere appears that he stabbed Gold to protect himself from death or serious injury. The accused's own testimony compellingly indicates that if Gold, in fact, struck him on the head, he did not pursue the accused when the accused fell into the pond. On the contrary, according to both the accused and Prapan, it was the accused who rushed at Gold, not vice versa. Retreat, of course, is not a sine qua non for reliance upon self-defense, but the failure to retreat, when retreat is feasible and the alleged attacker makes no effort to continue with his purported assault, weighs against the idea that recourse to a deadly weapon was necessary for one's defense. Here, the accused's testimony demonstrates that he not only rejected retreat as a reasonable alternative, but that he affirmatively elected to rush at Gold, who was several feet from him, and that he rushed at him with a knife. The accused's own admissions lead ir-

**423**

resistibly to the conclusion that he determined upon mutual affray, or he was resolved to retaliate for the blow purportedly inflicted upon him by Gold. Either alternative precludes a claim of self-defense. United States v Wilson, supra, at page 785. Consequently, even considering the nature and extent of the accused's injuries, the law officer was correct in ruling that self-defense was not in issue.

The decision of the board of review is affirmed.

DARDEN, Judge (concurring):

I concur.

Self-defense, if raised even minimally, should be tested by a jury, properly instructed. Cf. United States v Holly, 18 USCMA 413, 40 CMR 125. Where the appellant's own testimony counters this defense, obviously it is not an issue. Accordingly, I join with the Chief Judge in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

In the case at bar, the law officer initially announced that he would give an instruction on self-defense because he believed it was raised by the evidence. However, after overnight consideration, he reversed his decision, apparently in the belief that such a defense would be inconsistent with the accused's claim that he was in a mentally incompetent state resulting from a severe blow on the head administered by the victim.[1] Defense counsel believed that both instructions should be given in light of the evidence. His specific request for an instruction on self-defense was denied.

The basis for the law officer's determination in this area was in error for, as my brothers note, inconsistent defenses can be interposed in a criminal case. United States v Snyder, 6 USCMA 692, 21 CMR 14—see discussion and cases cited at page 696. The majority, however, find that the law

officer did not err on the ground that the evidence did not raise the issue of self-defense.

I need not go into a lengthy discussion on the evidence for the majority have done that. It is enough to note that the evidence was at times contradictory and confusing. It is true, as my brothers indicate, that the accused directly testified that he did not open his knife and that he never stabbed anyone at anytime. However, he was unable to remember certain things that happened. In that regard, a court member asked the accused:

"Q. Earlier in your testimony you made a statement to the effect that 'I did not stab anyone,' yet you made reference to the fact you did not remember certain things that happened after the fighting sequence, shall we say, or the incident, if you want to call it that. There are certain things you stated you did not remember. Are you saying you do not remember stabbing anyone or are you saying—your direct statement was, 'I did not stab anyone,' I believe. Which are you trying to say?

"A. As far as I know, I didn't stab anyone, sir."

While talking with the victim, the accused testified he received a sharp blow to the head which dazed him. "I thought part of my head was falling off for a moment—I found out later it was my ear." Upon being brought to the dispensary, accused was "semiconscious" and "confused." Approximately seventy-five percent of his ear was separated from his head and he had other injuries to his chest and back. The examining physician opined that "it could have been caused by a blow to the head or a fall. I think it was caused by something other than being in a fight because from being hit on the head he would be like this, but being in a fight, he wouldn't be confused like he was."

In United States v Sitren, 16 USCMA 321, 36 CMR 477, this Court said:

"An accused is entitled to have presented instructions relating to

---

[1] When the accused was brought into the dispensary he was in a semiconscious condition.

any defense theory for which there is evidence in the record. United States v Amie, 7 USCMA 514, 22 CMR 304; United States v Mathis, 15 USCMA 130, 35 CMR 102; United v Bellamy, 15 USCMA 617, 36 CMR 115. As we stated in United States v Smith, 13 USCMA 471, 474, 33 CMR 3:

'. . . What is contemplated is the affirmative submission of the respective theories, both of the Government and of the accused on trial, to the triers of fact, with lucid guideposts, to the end that they may knowledgeably apply the law to the facts as they find them.' "

In my opinion, self-defense is unmistakably raised by the evidence. If the accused is believed, he was viciously struck on the head by the victim or someone prior to taking out his knife. Credibility is a question reserved solely for the fact finders. We have consistently so held. Ae we said in United States v Condron, 17 USCMA 367, 369, 38 CMR 165:

". . . Our most recent pronouncement on this subject is to be found in United States v Evans, 17 USCMA 238, 38 CMR 36, where, at page 242, we said:

'Thus, we have long held the test whether an offense is reasonably raised is whether the record contains some evidence to which the military jury may attach credit if it so desires. United States v Jones, 13 USCMA 635, 33 CMR 167; United States v Remele, 13 USCMA 617, 33 CMR 149; United States v Kuefler, 14 USCMA 136, 33 CMR 348. It matters not that the accused is the sole source of his contention. He certainly "has the capacity to testify directly to the intent, knowledge, or other *mens rea* which fills out and characterizes his acts either as criminal or legally blameless." United States v Remele, supra, at page 621. And the reasonable character of his testimony is "for the determination of the court-mar-

tial, under proper instructions." United States v Jones, supra, at page 640.' "

By refusing to instruct on self-defense, because of the accused's testimony that "he does not remember doing anything—as a matter of fact, on the stand he testified that he did not stab anybody"—the law officer removed this issue from the consideration of the court as effectively as though he had affirmatively instructed that self-defense was not in issue. This he may not do. Cf. United States v Holly, 18 USCMA 413, 40 CMR 125.

The court-martial was told only that in view of the evidence of the blow to the head, which left Rine in a "dazed, stunned, or semi-conscious condition," he could not be convicted unless they found that he "was mentally capable of entertaining and did entertain the criminal intent involved in the offense of murder and the lesser included offense of manslaughter." But what of his right to protect himself following an unwarranted attack which partially tore off his ear? Cf. United States v Black, 12 USCMA 571, 31 CMR 157. The uninstructed members were unaware of this or of any of the other factors involved in self-defense, such as, the fact that the law does not demand detached reflection under pressure of a violent attack or in a fast-moving situation. United States v Smith, 13 USCMA 471, 33 CMR 3; Brown v United States, 256 US 335, 65 L Ed 961, 41 S Ct 501 (1921). These, and the other elements which furnish the basis for self-defense, were set forth in the requested instruction and are attached to the record as appellate exhibit one.

The general rule is well-stated in 40 Am Jur 2d, Homicide, § 155:

". . . Whether or not a particular homicide is committed in repulsion of an attack, and, if so, justifiably, are questions of fact, not necessarily dependent upon the duration or quality of the reflection by which the act may have been preceded." [Hickory v United States,

151 US 303, 38 L Ed 170, 14 S Ct 334 (1894).]

The totality of the circumstances in this case were, in my opinion, of such a nature as to raise a question of fact, for resolution by the court members under proper instructions, as to whether the accused acted in self-defense. While the accused did not directly testify that he was in fear of death or grievous bodily harm, he did state that he was dazed by the blow to his head and could not remember much of what happened thereafter. What his state of mind was at that time is unknown, but in view of the serious nature of his head wound, and the suddenness of the assault, the court could reasonably infer therefrom that he feared further attack and additional grave injuries. Accused's testimony of what he did recall indicated that his response to this assault was instinctive. No one witnessed the actual stabbing, but two Thai nationals observed that the victim had a beer bottle in his hand just prior to the encounter. One of them testified that the victim threw a beer bottle at the accused as he ran away. Whether the accused should have departed immediately, thereby avoiding further difficulty, is one of the elements to be considered by the court.

In sum then, I believe that the initial aggressive act by the victim, the serious injuries to the accused, and the subsequent affray constitute more than sufficient evidence to raise the issue of self-defense. In such circumstance and especially in light of the defense request, I can only conclude that the law officer erred prejudicially by refusing to instruct on self-defense. United States v Sitren, supra.

I would reverse the decision of the board of review and order a rehearing.

Since this case was argued before this Court prior to issuance of the Supreme Court's opinion in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), I would grant counsel, defense and Government, the opportunity to brief the issue of the applicability of that opinion to the facts of this case.