### GEO. THOMASON v. STATE.

No. A-3415.   Opinion Filed Sept. 18, 1920.

(191 Pac. 1096.)

(Syllabus.)

**ASSAULT AND BATTERY—Assault With Weapon to Do Bodily Harm—Insufficiency of Evidence.** In a prosecution for assault with a dangerous weapon with intent to do bodily harm, the evidence considered, and held as a matter of law insufficient to support the verdict and judgment of conviction.

*Appeal from District Court, Pontotoc County;*
*J. W. Bolen, Judge.*

George Thomason was convicted of assault with a dangerous weapon, and he appeals. Reversed.

*J. W. Dean,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J. This appeal is from a judgment of conviction rendered on the 26th day of January, 1918, and sentence in pursuance of the verdict of the jury finding the defendant, George Thomason, guilty of assault with a dangerous weapon, and assessing his punishment at imprisonment in the penitentiary for one year and one day.

Several specifications of error go to the insufficiency of the evidence to support the verdict and judgment of conviction. Claude Hooper testified:

"The defendant is my neighbor; lives about a quarter of a mile from me. He had some geese in the back part of his field. They got out, and were eating my corn; so I went over to his place Sunday morning to see if he would not do something with them. His wife or girl said he was at the well. I met him half way between the house and the well, coming back with a bucket of water. He was barefooted, and we laughed and talked a little, and I asked him, 'What are you going to do with those geese?' He said, 'I don't know.' I said, 'You will have to do something with them; they are eating my corn up.' He said, 'I didn't know that they were bothering your field at all.' I said, 'If you do not, it is because you did not look.' He said, 'You are a God damned lying son of a bitch.' I said, 'I don't take that off of anybody.' He hit me with his fist and knocked me down, and as I got up I hit at him. He dodged my lick, and walked back 5 or 6 steps, and got a home-made singletree 2½ feet long and 2 inches in diameter, and, when he started back to me with the singletree, his wife caught

him, and said, 'George, you are not going to .hit Claud with that singletree'; and she said to me, 'Claud, you have no business coming up here and raising a racket; you get out and go home.' I went to the gate, and went outside, and Mrs. Thomason tried to get him in the house, and he said, 'Turn me loose; I am going to knock the son of a bitch in the head.' He came out and started to strike me across the fence. I saw I was too close to the fence, and I backed back; then he went to the gate and came out. I found a stick 3 feet long, and came up a step or two. I made a motion with my stick, and he struck me across the hand and broke my stick. I made another lick then, and threw this hand up to guard the lick off, and he struck me across the side of the head with the singletree, and that is the last I know of it until I was going towards home. My wife and Mr. Berch had me by the arms. Blood was running out of my ear."

On cross-examination, he was asked if he did not take his knife out of his pocket and call the defendant a liar, when he said he did not know the geese were in his field. His answer was, "Not any more than that;" and "I had my knife after he got the singletree."

G. W. Berch testified:

"It is 100 yards from my house out to the section line. I was shaving, standing outside the door. I saw Claud make a lick with a stick, and then saw Thomason knock him down. Thomason had a singletree in his hand, and hit him somewhere about the head. I went over, and Claud had a knot raised up behind his ear as big as a quail egg. Mr. Thomason handed me Claud's knife, but it was shut."

For the defense, Mrs. George Thomason testified:

That Claud Hooper came to the front door and said, "Where is Mr. Thomason?" Her daughter said, "He has gone to the well;" then he turned and went around the

house. "I was in the house, dressing the baby, and I heard Mr. Hooper say, 'I will kill them God damn geese if they get in again.' Mr. Thomason said, 'No; don't kill the geese; take them up and sell them.' They had got out of the pen, and our little boy was out hunting for the geese at that time. I walked out and said, 'Don't have any trouble about these geese; we will sell them.' They were both mad. He struck at Mr. Thomason there in our yard. My husband dodged the lick, and Mr. Hooper took his knife out of his pocket, and opened it, and said, 'I will cut your God damn guts out.' My husband stepped back and picked up this singletree. I said, 'Don't do that George;' and he said, 'What do you take me to be, to let a man come in my own yard and run me under my floor.' I said, 'Claude, give me your knife, and go back home; I will see that he don't hurt you.' He said, 'I will give you nothing; I will attend to my part of this fight.' Then he said, 'You got it on me, Mr. Thomason; let's go to the section line.' My husband said, 'Put your weapon down and let's fight it fair.' Mr. Hooper walked out of the gate and went out. I saw Mr. Berch in his door, and I called, 'Come over here and help keep these two fellows from fighting.' I heard Mr. Hooper call my husband a God damn son of a bitch, and dare him to come out, and he would cut his guts out, and I turned and started to the house. I didn't see the lick. Mr. Thomason called for me to bring some water, and he was holding Claud on his arm."

The testimony of Nona Ruth Thomason was in substance the same.

The defendant testified in his own behalf:

"I live 11 miles north and two miles west of Ada. I am a justice of the peace in Maxwell township. I was coming from the well, and I said, 'Good morning, Claud.' He said, 'Good morning,' and followed it up by asking me what I was going to do with those damn geese of mine. I had 40 head in my alfalfa hog pasture. I asked him, 'Was my geese bothering him?' and he said they were, and I told

him that I would take the geese off and sell them the next day. He said I knew the geese were out. I told him he was a liar when he said I knew they were out. He struck at me with his fist, and I dodged his lick, and he ran his hand in his pocket, and pulled out his knife, and held it open in his hand. I jumped back and picked up this single-tree. I told him, if he had to have a fight, we could fight fair, and not lay one another out. My wife tried to get him to go, and promised him that she would take care of the geese. He said, 'By God, he would handle his part of the fight;' then he told me that I had the edge on him there in my own yard, and invited me out in the section line. When I got to the gate, I stopped on the inside; of course, curse words were used on both sides, but I never called him a son of a bitch. He stopped outside the gate, and dared me out, and called me a God damn coward, and said he would cut on me, and picked up the club. He met me in the gate, and struck at me with the club, and hit my arm here. The club broke. He drew back with his knife, and I hit him with this singletree. I picked him up, and hallowed to the folks to bring some cold water. I put his head on my arm and washed him, and done as much for him as his father. I saw his wife coming, and he was conscious by the time she got there. He walked home with his wife and Mr. Berch. The last words he said to me, as he walked away, was, 'I will kill you before this is over with.' The knife looked to be about a 4-inch handle and a 3-inch blade, and he had the large blade open."

The foregoing is the substance of the material testimony upon which the verdict and judgment were based.

Under the provisions of the act of Criminal Procedure, if at any time, after the evidence on either side is closed, if the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. Section 5896, Rev. Laws 1910. Carefully considering the whole testimony in this case, we are convinced that the court

should have advised the jury to acquit the defendant when the state rested, because as a matter of law, the evidence was insufficient to sustain a conviction. If the complaining witness used profane and abusive language at the defendant's home, in the presence of his family, the defendant had the legal right to expel him from the premises as a trespasser, if necessary by the use of reasonable force short of indangering life or bodily harm. The testimony of the complaining witness shows that he was advancing on the defendant with a club when the defendant struck him with a singletree. The testimony of the only other witness for the state shows that the complaining witness struck at the defendant with a stick just before the defendant struck him with the singletree.

In our opinion, the evidence fails so far to support the verdict that the necessary inference is that the jury, in reaching their verdict, must have acted from passion, prejudice, or undue influence. Reaching this conclusion, it is unnecessary to notice other errors assigned. However, it is apparent that the instructions on self-defense, which were duly excepted to, are erroneous.

Because the evidence is insufficient to warrant a conviction, or sustain the verdict, the judgment is reversed.

ARMSTRONG and MATSON, JJ., concur.