UNITED STATES, Appellee

v

WILLIAM L. BATEMAN, Sergeant,
U. S. Army, Appellant

8 USCMA 88, 23 CMR 312

No. 9392

Decided June 21, 1957

*Major Edward Fenig* argued the cause for Appellant, Accused.
*Captain Thomas J. Nichols* argued the cause for Appellee, United States.
With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

### I

A general court-martial convicted the accused of bigamy, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to dishonorable discharge, total forfeitures, and confinement for one year. The convening authority approved, but a board of review, although affirming the findings, reduced the sentence so as to provide only for incarceration for six months and forfeiture of $44 per month for a like period. Thereafter, accused petitioned this Court for a grant of review which we ordered, but arguments were limited to the single issue of whether the law officer erred in refusing to give an instruction requested by defense counsel.

The nature of the question confronting us requires a detailed consideration of the evidence. At trial it was shown that accused had married Lela Hendricks on December 29, 1951; that the marriage had never been dissolved; and that she was still living. In addition, it was shown that on March 22, 1956, accused married one Ora Rutledge. That testimony established a prima facie case but because of the nature of the defense, certain other evidence was introduced. Essentially, it disclosed that accused and his first wife had marital difficulties; that one serious breach occurred while he was in Europe in 1954; that at that time the wife filed a notice of intent to apply for a divorce; that accused had upon that occasion executed a waiver of appearance; that having done so he concluded he was divorced, but upon his return to the United States learned it was not so, and a reconciliation was effected; that the couple again separated in November of 1955; that they contemplated divorce and had discussed alimony and child support; that she had visited an attorney and had initiated divorce proceedings in Illinois by filing a notice of intent to file a divorce action at the expiration of a statutory sixty-day waiting period; that accused received knowledge of this initiatory filing in February of 1956; that the wife wrote accused informing him that she had waived the sixty-day waiting period, and that upon his signing and returning a waiver of appearance, she could go to court and obtain the divorce; that accused executed such a waiver and returned it to his wife's attorney, who received it on March 12, 1956; that accused concluded after he had signed that waiver and his wife had waived the sixty-day waiting period, he was divorced; that accused and the second wife

**89**

planned to get married some thirty days before the waiver was executed but could not find a house; that the necessary blood test was taken some few days before the second marriage and within ten days after the signed waiver was received by the attorney; that at the time the accused married the second spouse he thought he was divorced from his first wife; and that he did not change his allotment to the first wife because he wanted to be sure he was divorced.

After both sides had rested and completed their closing arguments, defense counsel requested the following instruction:

"In military law, entering into a bigamous marriage in good faith upon a reasonable and non-negligent belief that the prior marriage had ceased to exist is not an offense."

The law officer refused to give the instruction or one similar thereto, and it is his refusal in this regard that petitioner cites as prejudicial error.

## II

This Court has been confronted previously with a case wherein an accused charged with bigamy defended on the theory that he contracted the second marriage under the mistaken belief that he had been divorced from his first. In United States v McCluskey, 6 USCMA 545, 20 CMR 261, the law officer instructed, in essence, that an honest and reasonable belief that a prior marriage relationship had been dissolved at the time of the second marriage contract was a defense to that charge. We approved that instruction saying:

". . . this petitioner—while admitting his previous marriage, but asserting a mistaken belief in the existence and validity of a subsequent divorce—must be held not only to have acted honestly, but also to have taken such steps as would have been taken by a reasonable man, under the circumstances, to determine the validity of that honest belief. That is, he should have done so before relying thereon in such a serious setting as the present one."

It is to be noted that the rule we therein adopted requires that a mistake of fact, to constitute a defense to bigamy, must be both honest and reasonable. That principle was reaffirmed in United States v Noe, 7 USCMA 408, 22 CMR 198. Close inspection of the record shows that the instruction requested by defense counsel at trial was tailored to fit that concept, and it was sufficiently correct and complete to require it to be given if the evidence reasonably raised the defense. Therefore, the problem of moment here is whether such an instruction, although required in an appropriate situation, is necessary under the circumstances of the case before us. Certainly, it has long been the rule in this Court that an instruction upon an affirmative defense is required only when it is reasonably raised by the evidence. United States v Ginn, 1 USCMA 453, 4 CMR 45; United States v Simmons, 1 USCMA 691, 5 CMR 119; United States v Miller, 2 USCMA 194, 7 CMR 70; United States v Heims, 3 USCMA 418, 12 CMR 174; and United States v Short, 4 USCMA 437, 16 CMR 11.

Government counsel argue forcefully that accused's testimony that he believed himself divorced is inherently incredible and unworthy of belief, directing attention to a pretrial statement made by him. In it, accused made some claim he was doped by habit-forming drugs at the time of the second marriage and then went on to state, inter alia, "As far as knowing that I was committing bigamy, if I had been in my right mind I would have known it." Implicit in this statement, appellate Government counsel contend, is an acknowledgment that he was not at all mistaken as to his true marital status, which claim is diametrically opposed to his avowed belief that he was divorced. We need not pass judgment on that argument, for that portion of his testimony can be considered with the balance of the evidence to ascertain whether his belief was reasonable.

When we consider this record in the light most favorable to the accused, we

are sure that if an issue of honest mistake of fact was raised by ▮▮ the evidence—which we will assume, arguendo—a reasonable mistake was not. Accused's first testimony at trial as to his belief regarding his marital status was this:

"A. As far as I was concerned, after I signed the papers and sent them back, and my wife had signed a waiver of the sixty-day waiting period, I was divorced."

That would be a remarkable belief even by one who was unfamiliar with such legal proceedings, but it was shown that divorce proceedings against the accused had been initiated by the first wife in a similar manner some two years prior to the time in question, and he had acquired some experience in this particular affair of life, for the wife did not proceed and no divorce was obtained.

Apparently the first explanation was not satisfactory, for the accused retreated from his initial position. He later went on to say that he knew his wife would be required to make a court appearance before the divorce could be obtained. However, he never sought any information as to whether she went forward with the necessary hearing. It is crystal clear, therefore, that not even the accused contended he believed himself divorced, either at the time he signed the waiver or at the time his wife's attorney received it. Indeed, not only should his previous experience have taught him that merely signing a waiver did not effectuate a divorce, but he acknowledged that he knew further action was required on the part of his wife.

The question then narrows to whether the accused acted as a reasonable person when he married without ascertaining if his first wife had taken the legal steps necessary to obtain the divorce. There is not one iota of evidence to support a reasonable belief that she had gone forward with the proceedings. True, there is a modicum of testimony which might indicate an intention on her part to act in the future, but nothing to show she had in fact proceeded. At best, accused's showing consisted of no more than that he married a second time solely upon an assumption he was divorced. Unfortunately, that assumption was false, yet it would have been a very easy matter to have ascertained the true condition. Accused was stationed at Fort Knox, Kentucky, and his first wife was living in Springfield, Illinois—they were separated by a distance of only approximately 250 miles. He had corresponded with the attorney who resided in the same general area. It would, therefore, have been an easy task to contact the wife, the lawyer, or the clerk of the court to ascertain the true status.

Further facts which show an utter disregard of reason are these. The second marriage would have been consummated some two weeks before the waiver was signed if a home had been available. The accused was required to take some preliminary steps before the last ceremony could be completed, and he had a blood analysis made some few days ahead of his marriage. Certainly the record shows beyond peradventure that accused was preparing for the second ceremony before divorce proceedings had been initiated and that his course of conduct was not substantially influenced by the court proceedings. He had ample time for investigation, yet he was so disinterested in learning the true situation that he never made a single inquiry as to his marital status. Moreover, no one, whether in a position to know or not, ever informed him that he was legally separated.

Here, then, we have a man who just a few short days after the time he signed the first papers for divorce entered into a solemn contract of marriage, having received no information that his prior marriage had been dissolved and doing no more than blandly assuming, without inquiry or investigation of any sort, that he was free to marry. As we have noted previously, a reasonable belief in a valid divorce is required, and the posture of this record is such that we cannot find any evidence to support that belief.

In our view, a divorce accomplishes a change in status, and we are sure that no one will deny that it is indeed

a weighty affair of life. So, too, is a discharge from the military service, and in United States v Holder, 7 USCMA 213, 22 CMR 3, this Court unanimously held that a Marine, because he did not exercise ordinary care in determining his true status, could not have reasonably believed himself discharged and, therefore, that mistake of fact as to absence without leave was not raised as an issue in that case. There the accused had received two previous releases and was cognizant that certificates of discharge were issued. Further, he had not once sought to ascertain from anyone likely to know, whether or not he had been discharged. We believe the facts of this case compel a like result, for an important change in status was involved; accused knew by personal experience that signing of waivers alone would not accomplish divorce; he failed to inquire by any method whatever of anyone at all— much less anyone likely to know— whether he had been divorced; and he was so uncertain as to his status that he refused to change his allotment authorization. We must measure his story by the standard of a reasonable man, and when we do that we are required to hold that he failed to raise an issue.

Our recent decision in United States v Noe, 7 USCMA 408, 22 CMR 198, does not induce a contrary result, for in that bigamy case, the accused contacted his wife by telephone and was informed by her that she had obtained a divorce. There, at least, the accused could reasonably assume that his wife would not falsify about the true status. Here no comparable showing is made.

The ruling by the law officer upon the requested instruction was not error. The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I believe the issue of honest and reasonable mistake of fact was raised by the evidence. The court-martial under proper instructions could have found that the accused was both honestly and reasonably mistaken concerning the termination of his first marriage. For me, this was for the triers of fact and the law officer erred when he refused the correct requested instruction offered by defense counsel. I would reverse and order a rehearing.