UNITED STATES, Appellee

v

DAVID M. REGALADO, Private, U. S. Army, Appellant

13 USCMA 480, 33 CMR 12

*Captain Robert L. Brosio* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod, Captain David M. Gill,* and *Captain Thomas Stapleton.*

*Captain Joseph M. Livermore* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper* and *Captain Alvin B. Fox.*

## Opinion of the Court

KILDAY, Judge:

Appellant was tried by general court-martial, convened in Germany, on a charge of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. Contrary to his plea he was found guilty of the charge and specification. His sentence was fixed at dishonorable discharge, confinement at hard labor for eighteen months, reduction to lowest enlisted grade and total forfeitures. The convening authority approved the sentence and a board of review in the office of The Judge Advocate General of the Army approved the finding and sentence.[1]

Appellant, in his petition for review, assigned no errors, but this Court granted review to consider certain questions as to the adequacy of the instructions given to the court-martial by the law officer on the law of self-defense.

Regalado and a fellow soldier, Smith, entered a gasthaus together. While therein, Smith and a third soldier, Lewis, became involved in an argument and created a disturbance. The manager of the gasthaus ordered those in the argument to leave the place of business. All agree that appellant was not involved in the argument.

Regalado testified that he had been in the latrine and as he came out "there was some arguing." He took Smith by the arm and said, "lets go," whereupon the manager came from behind the bar and shoved Smith. The latter told the manager not to push, appellant went on to state. And while he was holding Smith's arm, Regalado averred, the manager also pushed and struck him with a club. Having been attacked, and being fearful of all the Germans standing around, appellant drew from his pocket a switchblade knife with a blade some four inches in length, and stabbed the manager in the stomach.

The manager, Arthur Saupe, testified that when the fighting broke out he asked Smith to leave the tavern, whereupon "he [Smith] used force against me . . . . and then that was when I received the stab." Saupe stated that the accused was not involved in the argument or the ensuing scuffle. He did not know where Regalado was at that time nor did he see the accused at the time he was stabbed. It was after he was stabbed, the manager asserted, he called for and received the club, a rubber or leather "stick," from behind the bar. He denied making any movement or threatening gestures toward the accused. He further testified that he did not see the person who stabbed him.

Smith verified that he and Lewis were involved in an argument, and that the manager directed them to leave.

---

[1] Appellant was assigned to the military retraining program, and the Secretary of the Army has taken action, upon completion of the required period of training, to suspend the unexecuted portion of appellant's sentence and restore him to duty to complete his term of service under his current contract of enlistment.

As he prepared to leave, Smith asserted, the manager pushed him. When Smith protested the pushing, the manager "backed up, pulled out a stick from his shirt." According to Smith, the German "acted like he wanted to hit me with it." He didn't succeed, however, because Harris—another soldier—stepped between them. As to Regalado's participation in the affray, Smith testified he was in no way involved. He didn't know where appellant was but, the last time Smith saw him he was sitting at a table or a booth. Smith did not see the manager push Regalado or threaten anyone other than himself, Lewis, and Harris. Had the manager pushed Regalado, Smith "think[s]" he would have seen it, because "the manager was right in front of me."

It is a well-recognized principle of law that the rightful occupant of a ▪ place of business has a legal right to expel from the premises anyone who abuses the privilege by which he was initially allowed to enter thereon. In 4 Am Jur, Assault and Battery, this proposition is stated as follows:

"Generally. The occupant of any house, store, or other building has the legal right to control it and to permit those whom he pleases to enter and remain there, and he also has the right to expel from the room or building anyone who abuses the privilege which has been thus given him. Therefore, while the entry by one person on the premises of another may be lawful by reason of an express or implied invitation to enter, his failure to depart at the request of the owner will make him a trespasser and justify the owner in using reasonable force to eject him. The most common applications of this rule are those where a person enters a hotel, place of amusement, conveyance of common carrier, or other place, and while there, by his misconduct or failure to comply with reasonable rules and regulations, forfeits his right to remain. On the forfeiture of his right he becomes a trespasser and may be forcibly ejected on failure to depart after a request to do so." [Section 76.]

"Degree of Force. Where a person in a public or semipublic place becomes a trespasser by reason of his conduct while there, and, upon request to leave, fails to depart within a reasonable time, the proprietor of such place may use such force, and only such force, as is reasonably necessary to eject him. Of course, a greater degree of force may be used where the person sought to be ejected violently resists or assaults the proprietor. But the proprietor of a place may not purposely provoke a disturbance with a customer and then make use of his proprietorship as an excuse for an unnecessary assault in ejecting him. If more force is used than is reasonably necessary, it constitutes an assault and battery." [Section 77.]

Similarly, in 6 CJS, Assault and Battery, § 94, it is stated that:

". . . one who is lawfully in charge of premises, and has requested another to leave whom he had a right so to request, may lawfully use as much force as is necessary to remove such other, after allowing him a reasonable time to depart, and the trespasser may not resist if only reasonable force and agencies are employed in making the ejection. The right to expel a trespasser, using no more force than is reasonably necessary therefor, without being guilty of assault and battery, is not limited to one's dwelling house, but applies to any property of which he was lawful possession."

The question involved is an elementary one and was well expressed in State v Flanagan, 76 W Va 783, 86 SE 890 (1915):

". . . If Waldo was willing to go off the land, defendant would have no right to punish him because he found him on it, and if he attempted to do so Waldo had a right to defend himself against bodily harm. But, if he was ordered off and refused to go, and defendant then undertook to put him off, using no more force than.

482

was reasonably necessary for that purpose, Waldo would have no right to resist. The right to eject a trespasser gives the proprietor no right to inflict unnecessary punishment."

See also Petty v State, 126 Texas Crim 185, 70 SW2d 718 (1934); Thomason v State, 17 Okla Crim 666, 191 Pac 1096 (1920); and Annotations on "Right to eject customer from store," 9 ALR 379–382; 33 ALR 421–422.

So, too, this Court has long adhered to the rule that reasonable force may be used to eject a trespasser. Thus, in a slightly different factual context, we have held individuals may protect their place of abode against unlawful intrusion. When one with the right to do so has ordered another from the premises, the latter has no right to refuse or resist. See United States v Adams, 5 USCMA 563, 18 CMR 187; United States v Berry, 6 USCMA 638, 20 CMR 354.

The record in this case reveals that the manager of the gasthaus initially directed the two soldiers who were fighting to leave the establishment. According to his testimony and that of Government witnesses, he then took each by the arm to get them outside. Smith protested against being "pushed." It was at this point that the manager was stabbed. No one saw the actual stabbing, but the victim's brother-in-law, Johann Braunmueller, a military policeman in the German army, observed the accused with a knife in his hand. He disarmed and subdued Regalado, and held him for the American military authorities.

On cross-examination, Regalado stated that the manager, in requiring Smith to leave the gasthaus, had pushed Smith and then pushed the appellant when the latter came up to intercede. When the manager pushed him, the appellant stated, "I come back." He noticed nothing in the manager's hand but as Regalado—to use his words— "come up again," the manager "he drew back and he hit me"—this blow with the stick, apparently. When trial counsel inquired:

"OK, Regalado, now, do you think that he was going to kill you with that stick?"

appellant responded:

"I didn't know, sir, but I was afraid."

Further, when pressed on this matter Regalado admitted that prior to the time he intervened in behalf of Smith he had not seen the manager hit anyone with a club. Additionally, we note that appellant apparently had not concerned himself with the fact that the manager's purpose and intentions may have been wholly legitimate. Thus, when trial counsel suggested the manager was merely attempting to keep the disturbance quiet, and only trying to push Smith toward the door, Regalado stated:

"I just saw him pushing."

Assuming arguendo that appellant's account of the incident is correct, his purported fear of all the Germans in the gasthaus[2] would not give him a license to use a knife on the manager. However, considering appellant's testimony, and that of his witness, as a whole, it is quite evident the issue of self-defense was not reasonably raised by the evidence in this case. United States v Ginn, 1 USCMA 453, 4 CMR 45.

It is clear from the authorities herein cited that the manager had the right to request persons in the establishment to leave the same and to use reasonable force to eject them. Those being ejected had no legal right to resist. State v Flanagan, supra; 6 CJS, Assault and Battery, § 94, supra. If involved in hindering the attempt to eject Smith, the appellant had no right to resist, for to intervene on behalf of Smith gives him no greater rights than Smith. 4 Am Jur, Assault and Battery, § 54. Smith, under his own testimony, had no right to resist, for he had been directed to leave the establishment

---

[2] We note, parenthetically, that Regalado admitted on cross-examination that immediately around the manager there was a group of American soldiers.

and there was no evidence of excessive force to accomplish that end. Regalado, as we have noted, stood in no better position than Smith, Hence, as the staff judge advocate advised the convening authority in his post-trial review, interference by Regalado and employment by him of a dangerous weapon with which he stabbed the manager would constitute appellant an aggressor, who is not entitled to self-defense. United States v Berry, supra. See also, generally, 4 Am Jur, Assault and Battery, § 45.

On the other hand, Regalado's contention is that he had not interfered, but had taken hold of Smith's arm in an attempt to get him out of the gasthaus. Appellant asserts that when, in the course of assisting Smith to leave, the manager pushed and struck him, he was himself assaulted.

Appellant's own testimony fails to bring him within the sweep of the principles of self-defense. As the Chief Judge wrote for a unanimous Court in United States v Wilson, 5 USCMA 783, 785, 19 CMR 79, adopting the well-recognized rule:

"Self-defense is a plea of necessity. Therefore, it is generally not available to one who engages with another in mutual combat. Neither does it shield from criminal responsibility one who uses more force than he believes to be reasonably necessary to protect himself from injury."

In that connection it is settled law that:

". . . one must reasonably believe he is in immediate danger of death or of grievous bodily harm, in order to justify a deadly assault in self-defense." [Josey v United States, 135 F2d 809 (CA DC Cir) (1943).]

While "detached reflection" is not demanded under pressure or in a fast moving situation,[3] one ■ must in fact, and on reasonable grounds, fear imminent death or serious injury before he is entitled to resort to a dangerous weapon. Lujan v United States, 209

[3] Brown v United States, 256 US 335, 65 L ed 961, 41 S Ct 501 (1921).

F2d 190 (CA 10th Cir) (1953); Meadows v United States, 82 F2d 881 (CA DC Cir) (1936).

The same rule applied in other Federal courts was adopted by us as early as United States v Ginn, supra, and consistently followed since. United States v Straub, 12 USCMA 156, 30 CMR 156; United States v Acosta-Vargas, 13 USCMA 388, 32 CMR 388; United States v Smith, 13 USCMA 471, 33 CMR 3. As was pointed out in United States v Black, 12 USCMA 571, 31 CMR 157, even a fistic attack, under certain circumstances, may permit use of extreme measures for protection; there is no unqualified rule that one uses excessive force, as a matter of law and in all instances, when he resorts to a dangerous weapon to repel a fistic attack. Lujan v United States, supra; Meadows v United States, supra. But, as those cases make clear, the rule *is* firmly settled that one must fear imminent grave injury—whether by fists, numbers, weapons, or other circumstances—to entitle him to use deadly force in self-defense.

Applying the above principles to the case at hand, it is apparent accused did not justify stabbing ■ the manager with his ■ switchblade knife. On the facts of the record before us, it appears Regalado involved himself as a volunteer when the German manager, without employing undue force, attempted to eject a troublemaker from the gasthaus. Appellant had no right to interfere, as the evidence indicates he did; having done so, the law plainly does not permit him to assert self-defense. Nor do the facts of this case give Regalado any right to resort to the switchblade knife with which he inflicted the stab wound. The record fails to demonstrate he reasonably believed it necessary to employ such deadly force. Appellant had not seen the German hit anyone else with the "stick," much less injure them severely with it. And when allegedly hit himself, Regalado retaliated, not just once, but a second time he "come up again." He does not claim nor does the record indicate he was hurt seri-

ously. Neither does it appear that appellant bothered to take cognizance that the manager's action and purpose may have been legitimate. Thus, while Regalado asserted he was trying to assist his friend to the exit, he was not interested in whether the German manager was bent on that same purpose; his concern went no further than that "I just saw him [the manager] pushing." Last, but surely not least, when Regalado was asked what he thought the German intended with the stick, he indicated no fear of being killed. Neither did he make any claim he was afraid of grievous bodily harm. Rather than asserting any fear of that sort, he replied simply, "I don't know." We are not unmindful that he added he was afraid; as we have previously indicated, however, self-defense is a plea of necessity, and the authorities are legion that no such necessity exists to employ deadly force unless the person allegedly assaulted is, in fact and on reasonable grounds, subjectively afraid of imminent death or serious injury. Naked fear alone does not meet that standard, and Regalado neither claimed more nor does the totality of his actions —as indicated by all the evidence— demonstrate that he entertained more.

We hold, therefore, in accordance with the aforementioned authorities, that the issue of self-defense was not reasonably raised to the charged offense of assault with a dangerous weapon. United States v Ginn, supra.

In view thereof, the law officer was not required to instruct the court-martial on self-defense. Having done so, the appellant received an advantage to which he was not entitled. We need not inquire, therefore, into the correctness of the instructions given on that issue, for appellant is in no position to claim he was prejudiced by this gratuitous windfall. United States v Rodriguez-Suarez, 4 USCMA 679, 16 CMR 253; United States v Gurevich, 7 USCMA 203, 21 CMR 329; United States v Mingo, 8 USCMA 164, 23 CMR 388. See also Galloway v United States, 235 F2d 515 (CA DC Cir) (1956); and United States v Bateman, 8 USCMA 88, 23 CMR 312.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.