UNITED STATES, Appellee

v

STANLEY C. CAMPBELL, Private First Class, U. S. Army, Appellant

13 USCMA 531, 33 CMR 63

No. 16,199

March 15, 1963

*Captain Bruce C. Johnson* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod, Captain Thomas Stapleton,* and *Captain Richard A. Baenen.*

*Lieutenant Colonel Bruce C. Babbitt* argued the cause for Appellee. United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper, Captain Jerome Nelson, Captain Carl F. Wrench,* and *Captain Alvin B. Fox.*

## Opinion of the Court

KILDAY, Judge:

The appellant was arraigned before a general court-martial, in Germany, on a charge and specification of unpremeditated murder under Article 118, Uniform Code of Military Justice, 10 USC § 918. He pleaded not guilty, but was convicted as charged and sentenced to a dishonorable discharge, total forfeitures, reduction to the lowest enlisted grade, and confinement at hard labor for fifteen years. The convening authority approved the sentence. A board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence.

This Court granted appellant's petition for review on one assignment as follows:

Whether the law officer erroneously instructed the court on the issue of self-defense.

We note that the instruction on self-defense is subject to serious question as to its adequacy. However, ▓▓▓▓▓▓ our careful consideration of the entire record has convinced us that the issue of self-defense was not reasonably raised by the evidence and the law officer was not required to instruct thereon. Therefore, the appellant was the recipient of a gratuity and is not prejudiced by any deficiencies in the instruction on that issue. United States v Regalado, 13 USCMA 480, 33 CMR 12; United States v Brown, 13 USCMA 485, 33 CMR 17;

United States v Duckworth, 13 USCMA 515, 33 CMR 47; and cases cited therein.

We proceed to an analysis of the evidence as reflected by the record of trial. Appellant was a member of the Howitzer Battery, 2d Reconnaissance Squadron, 14th Armored Cavalry. At the time of the incident here involved, his organization was engaged in a field problem and was in bivouac near Oberafferbach, Germany. In the evening, about 7:00 p.m., appellant and Private First Class Burns of his organization left the bivouac area, contrary to orders and without a pass, and went into the above-named village. They entered Cafe Fecher where they took a table and, they said, consumed two "shots" of cognac and three half-liter bottles of beer each. They remained in the cafe for some hours, during which time they engaged in friendly conversation with Germans present, toasted them, and were "prosted" by the Germans. About midnight appellant, Burns, and two of the Germans left Cafe Fecher and proceeded to Cafe Gruenenwald, a gasthaus. One of the Germans entered the latter gasthaus with appellant and Burns. Quite a large number of Germans were present. A festival was in progress, in observance of a church dedication, there was an orchestra and dancing. It appears as if appellant and Burns were the only Americans present, and they were dressed in field combat uniforms.

It is evident from the testimony of all witnesses, prosecution and defense, and is confirmed by a blood-alcohol test, that appellant and Burns were intoxicated. The degree varies from testimony they were "very drunk," to the blood-alcohol test several hours later indicating they were, at the time of the homicide, borderline intoxicated.

A quarrel, and later a fight, began in the gasthaus. There is great confusion as to the cause of the disturbance and as to who struck whom. It is difficult, if not impossible, to determine the details of the melee. It would appear as if, at the inception, Burns was out of the gasthaus, having gone to the latrine. However, it seems that Burns returned during the fight and participated therein to some degree, but was later outside the gasthaus. It also appears that appellant was involved in the fighting, or at least was struck and knocked to the floor. There is also evidence to indicate that appellant and Burns were ejected from the gasthaus at the same time.

However, one fact is clear and undisputed by any witness, and in his testimony at the trial appellant testified thereto with little variance from the testimony of the other witnesses. That is the crucial fact that appellant was ejected through the front door by a German or two Germans in charge of the gasthaus.

It is also clear that after having been ejected the appellant stood in front of the gasthaus in a belligerent manner with a rock in his hand. Also, his "tanker pants" and jacket or parka were either handed to him or thrown to him from the gasthaus. After receiving his clothing from the gasthaus, appellant reached into the pockets of his garments and drew therefrom a large TL–29 Government-issue pocketknife, which he opened. He attempted to re-enter the front door of the gasthaus through which he had been ejected, but found the door to be locked. Appellant testified that he desired to re-enter the gasthaus in order to get his companion, Burns, as he feared for Burns' safety. Finding the front door locked, appellant ran around to the side of the building in an attempt to re-enter the gasthaus by a side door. At the steps leading to the side door, appellant encountered the deceased whom he did not recognize as anyone he had seen before and who, clearly, had no part in the previous fracas. Deceased was blocking appellant's re-entry to the building. As a result of an encounter at the side steps or stoop, appellant killed the deceased by stabbing him in the heart.

In United States v Regalado, supra, we had occasion to consider the right of one in charge of a place of business to expel from the premises anyone who abuses the privilege by which he was initially allowed to enter thereon. As we there pointed out, it is a well-recognized rule of law that the rightful occupant of a place of business has a legal right to expel from the premises, anyone who abuses the privilege by which he was initially allowed to enter thereon. 4 Am Jur, Assault and Battery, §§ 76, 77; 6 CJS, Assault and Battery, § 94; State v Flanagan, 76 W Va 783, 86 SE 890 (1915); Petty v State, 126 Texas Crim 185, 70 SW2d 718 (1934); Thomason v State, 17 Okla Crim 666, 191 Pac 1096 (1920). It is clear that the proprietor of an ordinary place of business can revoke the implied invitation to enter. Crouch v Ringer, 110 Wash 612, 188 Pac 782; Brookside-Pratt Mining Co. v Booth, 211 Ala 268, 100 So 240; and the annotations to such cases at 9 ALR 379 and 33 ALR 421.

The testimony of appellant, his companion, Burns, other of his witnesses, and other witnesses at the trial, made it abundantly clear that appellant was ejected from the gasthaus by persons in charge thereof. The testimony of appellant and Burns would tend to indicate that excessive force was used in accomplishing his ejection. If such be true, it may be that those responsible are accountable under German law, both civilly and criminally, for the excess. It may also be true that appellant, if subjected to excessive force in accomplishing his ejection, was entitled to reasonable resistance. State v Flanagan, supra. Cf. United States v Acosta-Vargas, 13 USCMA 388, 391, 32 CMR 388; United States v Clansey, 7 USCMA 230, 22 CMR 20.

However, his ejection was a *fait accompli*. He had no right to resort to any force to re-enter the gasthaus for his own purposes. Therefore, the fact that deceased was blocking appellant's way when he sought to re-enter the gasthaus, gave appellant no right to resort to force in any degree to accomplish his re-entry.[1] His attempt to re-enter, armed with an open knife, rendered him the aggressor and the defense of self-defense was not available to him. Manual for Courts-Martial, United States, 1951, paragraph 197c; United States v Wright, 5 BR–JC 49; United States v Hines, 11 BR–JC 341; United States v Amdahl, 2 CMR 406; United States v Holsey, 4 CMR 199; United States v Ginn, 1 USCMA 453, 4 CMR 45; United States v Regalado, supra; United States v Black, supra; Turner v United States, 272 Fed 112 (CA 4th Cir) (1921); Laney v United States, 294 Fed 412 (CA DC Cir) (1923); Gibson v State, 150 Texas Crim 401, 202 SW2d 236 (1947); Pair v State, 33 Ala App 108, 31 So 2d 107 (1947).

Close analysis of the evidence and, specifically, what transpired at the side door of the gasthaus during the encounter between appellant and deceased resulting in the latter's death, makes it abundantly clear no issue of self-defense was reasonably raised. Apparently, only appellant and deceased were present at that particular time and the only evidence with reference thereto is contained in appellant's two out-of-court statements admitted into evidence, and the testimony of appellant at his trial by court-martial.

His first out-of-court statement was made the morning after the homicide. In it appellant stated that after having been ejected he wanted to go back in and get Burns. He couldn't go back in because there were too many Germans blocking the door. He then went around to another door at the side of the gasthaus. He had a TL–29 pocket-knife in his right trousers pocket. When they threw him out onto the street, he remembered that one of the Germans kept hitting him and threw rocks at him. About this time he took the knife from his pocket, opened the blade and backed away. He went to the other door to help Burns. When he got to the side door, he saw Burns lying on the steps and people were kicking him. He helped Burns up and across the street. The out-of-court statement then continued that before he lifted Burns off the steps, a German stood in front of appellant face to face. Appellant had his knife in his hand and he tried to talk the German away. He tried to tell the German that he didn't want any trouble. Appellant said that the German had a rock or something in his hand. It was either get whipped with what the German had in his hand or stab him. "I stabbed him somewhere in the front of his body around the chest or stomach. I don't know how many times I stabbed him. He went down."

Two days after making his first out-of-court statement, the appellant made a second one. In this second statement the appellant said that when he was pushed out onto the street, the door was immediately locked behind him. He was pretty mad about what happened and he got to thinking about Burns who was still inside among those people and who was liable to get hurt. As he was standing there someone opened the door and threw out his jacket and tanker pants. A German called his attention to his clothing. He tried to get back in the

---

[1] There is no need, under the circumstances of the case at bar, to consider the extent of the right of one person to defend another from death or serious bodily harm. See 1 Wharton, Criminal Law and Procedure, §§ 218, 219 (1957); Manual for Courts-Martial, United States, 1951, paragraph 197c; United States v Regalado, 13 USCMA 480, 33 CMR 12.

The law officer concluded, as did the staff judge advocate in his post-trial review, that no such issue is raised here. We agree. Although appellant indicated he was intent on going to the aid of his companion, under the former's initial story the purported assault on Burns was already complete. And, as to appellant's second pretrial version and his testimony in his own behalf, there is no evidence in the record giving him reasonable grounds to believe that his friend's life or body was in grave danger.

door from which he had been pushed, but it was still locked. At this time he took out his knife—he didn't recall if it was in his jacket or trousers pocket —and started around to the side entrance of the gasthaus. The reason that he got out his knife was because he knew there would be more than one German to fight in order to get Burns out of there, "and I guess if I had to cut someone I would." As he started around the side, he got half way up the stairs, a man stood in front of him blocking his way. "He saw the knife in my hand." He told this man in English what he wanted to do; to go into the gasthaus and get his buddy out. The man started to yell at appellant in German and started to hit appellant. Appellant bent over and the man hit him on the back of his shoulders and neck. "This is when I stabbed him. I felt that he had something in his hands. Immediately when I stabbed him he fell toward me and I pushed him away from me. I was standing on the steps below him and he was standing on the landing. When I stabbed the man I stabbed him somewhere between the neck and beltline. After I pushed the man, he fell to the landing and I stepped around him and stepped into the gasthouse [sic] to see if I could see BURNS, I did'nt see him and I stopped back out the door." Appellant continued, in his statement, and said he then started to go to the front entrance to get Burns. When he got to the front entrance he saw Burns lying on the steps with blood all over his face and running down his throat.

At his trial the appellant testified as a witness in his own behalf. He averred that "they" threw him out into the street. A German pointed out his clothes to him. He thought of running, just getting out of there, and he thought he'd better get Burns. He didn't know whether the people around him were the ones that attacked him inside or not. That's when he picked up his rock, "but I didn't actually want to hurt anybody with the rock, so I threw it down and got my knife." He wanted to get Burns out of there because he knew if they jumped appellant they would jump his friend. He tried to get back in the door;

it was locked. Then he ran around to the side to get into that door, and there was a German standing on top of the landing. Appellant was standing about two steps below the German and appellant "could tell he was blocking my way." He had never seen the German before. Appellant tried to explain his intentions, he wanted to get his friend and leave. The German said something and grabbed appellant. He had appellant by the right shoulder with his left hand. Appellant was still about two steps below him and, when he tried to pull back, the German just pulled appellant toward him. Then he came up with his hand and hit appellant in the back; in the back of the neck and in the back. Appellant was putting up his hands in an attempt to guard his head when this man hit him; he just kept holding appellant and hitting him. "That's when I stabbed him."

"Q Did he have any kind of a weapon?
"A Yes, sir, I could feel . . . I would say it was a rock, it was the weight of a rock."

Defense counsel asked the following questions and received the following answers:

"Q Campbell, why did you stab Eckl?
"A Well, sir, I tried to get away from him, he wouldn't let me go and he just kept hitting me with the rock.

"Q Were you afraid of him?
"A Yes, sir; he kept persisting, he just . . . he wouldn't push me back or anything, he just kept hitting me with this rock and I was going down surely."

It is true that appellant testified he was afraid of deceased. But appellant admitted drawing his knife before approaching the steps at the side door to the gasthaus. From his pretrial statements, and his testimony, as well as the other evidence in the case, it is clear appellant was the aggressor.

As this Court has previously pointed out:

"Self-defense . . . is generally not available to one who engages with another in mutual combat. Neither

**535**

does it shield from criminal responsibility one who uses more force than he believes to be reasonably necessary to protect himself from injury." [United States v Wilson, 5 USCMA 783, 19 CMR 79.]

Neither, as we have previously indicated herein, is a plea of self-defense available to an aggressor who provokes a fight. See also, generally, 4 Am Jur, Assault and Battery, § 45. Here the facts indicate that accused provoked the fight and was the aggressor throughout. Having been ejected from the gasthaus, he was bent on re-entry regardless of the consequences. He at first picked up a rock, but discarded it and deliberately armed himself beforehand with an open knife, because there would be more than one German to fight in order to get Burns out; "and I guess if I had to cut someone I would." He clearly evinced willingness, even before the fight, to use deadly force, and, indeed, his admitted acts corroborate that willingness.

Under the facts presently before us, we must hold against appellant. Accepting his story at face value, he deliberately armed himself upon his ejectment, then set about re-entering. He used his knife just as soon as deceased blocked his re-entrance to the gasthaus —the very contingency he had planned from the outset. He failed utterly to bring himself within the scope of action in self-defense.

The decision of the board of review is, therefore, affirmed.

Chief Judge QUINN and Judge FERGUSON concur.