UNITED STATES, Appellee,

v.

Robert L. ROSE, Private First Class,
U.S. Army, Appellant.

No. 60,000.

CM 8701098.

U.S. Court of Military Appeals.

May 30, 1989.

————

For Appellant: *Captain Harry C. Wallace* (argued); *Colonel John T. Edwards, Lieutenant Colonel Joel D. Miller, Captain Brian D. Bailey, Captain Alfred H. Novotne* (on brief); *Captain Donald G. Curry.*

For Appellee: *Major Daniel J. Dell'Orto* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain George R. Gillette* (on brief); *Captain Amaury R. Colon.*

*Opinion of the Court*

SULLIVAN, Judge:

In April and May 1987, appellant was tried by general court-martial composed of officer and enlisted members at Fort Carson, Colorado. Contrary to his pleas, he was found guilty of intentional infliction of grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. He was sentenced to a bad-conduct discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated February 19, 1988.

■ This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO INSTRUCT THE PANEL ON THE LAW OF SELF–DEFENSE.

We hold that the evidence of record justified the defense request for such an instruction in the present case, and the military judge's failure to so instruct constituted prejudicial error. *See United States v. Goins*, 17 USCMA 132, 134, 37 CMR 396,

398 (1967); * cf. United States v. Taylor, 26 MJ 127 (CMA 1988).

The evidence of record shows that appellant as well as Specialist Four (SP4) Sam Perine, Helen Perine, Renee Fernandez and Joni Davis were all at the Raiders Den, Fort Carson, Colorado, on the evening of November 1, 1986. Appellant had been drinking beer heavily that night. He directed his "attentions" towards Mrs. Joni Davis, who was sitting with Ms. Fernandez and the Perines. Mrs. Davis danced with appellant, but she did not otherwise respond to appellant's overtures.

The group left the Raiders Den, but appellant continued his amorous advances upon Mrs. Davis in the parking lot. SP4 Perine testified that he pushed appellant, who pushed back, and a fight ensued. Witnesses also testified that appellant broke a beer bottle he had been holding, and SP4 Perine suffered a stab wound in the abdomen sometime during the fight. No one saw appellant actually stab the victim. SP4 Perine was unaware of his wound, and he beat appellant to the ground before third parties arrived and stopped the fight.

Appellant testified that he was rebuffed by Mrs. Davis and was leaving when he was hit in the back of the head by the victim. Thereafter, appellant avers, he cannot remember anything.

During the period appellant said he lost his memory (but after the fight itself), witnesses testified that he made statements to various persons. There was testimony that appellant stated that he acted in self-defense, admitted to stabbing the victim, and stated that "he would do it again," as well as "that he hoped the son of a bitch dies." A government witness, Ms. Fernandez, also stated that appellant appeared to be using the bottle "in an attempt... [t]o scare Sam Perine off" and that appellant "was backing away from Sam."

At trial, defense counsel's strategy was premised on self-defense. However, when counsel requested a self-defense instruction from the military judge, the judge denied that request. Defense counsel ar-

gued that appellant's state of mind could be inferred from his actions during the fight. In pertinent part, the following discussion took place:

MJ Okay, I have gotten the findings worksheet and it is being revised. We will bring it in here in a little bit and have everybody look at it, but the first thing I want to talk about is I want to talk about the instructions. The first thing I want to talk about is self-defense.

Captain Langston, do you see an issue of self-defense in here?

DC I certainly do, sir.

MJ Well, explain to me how there's self-defense when the accused says he does not believe he was acting in self-defense, or at least doesn't remember doing it.

DC Well, the accused does recall being hit first.

MJ Okay.

DC By the attack being initiated by someone else. Furthermore, we have testimony from the Government witnesses who, specifically Renee Fernandez, who testified that, yes, she saw him break the bottle but he was backing away.

MJ Just a minute. Isn't self-defense something in the mind of the accused? The accused must feel as a reasonable person that he's being threatened in some way or another, either—

DC Well, if he's being hit from behind then he's certainly being threatened.

MJ I heard his testimony. He does not remember that he felt threatened. I don't care what any witness says that it looked like to them. Self-defense as I understand the law on self-defense is in the mind of the accused. He must, number 1, feel that he is threatened. And number 2, he must feel that the force he used was reasonable under the circumstances, depending on what offense you're talking about.

---

* This is the proper citation form.

DC Well, I think when you say feel he was threatened, when someone is in fact hit from behind, then not only have they been threatened but they have, themself [sic], received an injury to which they, you know, they respond.

MJ Okay, now let me say this. Self-defense, for self-defense to exist in regard to the offense this accused is charged with, aggravated assault, assault intentionally inflicting grievous bodily harm, the accused must, number 1, have had a reasonable apprehension that death or grievous bodily harm was about to be inflicted on him. That's the reasonable belief standard. Number 2, he must have actually believed that the force he used was necessary to prevent death or grievous bodily harm. Now he testified he has no recollection of whether he felt he was threatened in any way.

TC Your Honor, in response the Government would just submit that the Defense can't have it both ways. We have no subjective issues here whatsoever.

DC When you tie in together the intoxication evidence that we have, the fact that simply because he does not remember, I believe that was his testimony that he did not remember, does not mean that he was not at the time exercising what he believed to be a self-defense. If you look at Prosecution Exhibit 1, I believe, it says that he, having been hit from behind, the bottle was broken; he turned and attempted to hit Specialist Perine. That by itself indicates an act of self-defense, to get up and try and respond to the force that he, himself, had received.

MJ But on the issue of self-defense intoxication doesn't have anything to do with how much force he can use.

TC The Government would again reiterate that this action—

MJ Or whether he has a reasonable apprehension that he's being threatened.

DC Well, he had in fact already been injured.

MJ Well—

DC I mean it's like when you're assaulted you can offer or attempt or actually be assaulted. He was, in fact, assaulted according to his own testimony.

MJ That's right. But according to his own testimony he did not feel that he was fixing to get beat up, hurt, or damaged, or killed, or given—inflicted grievous bodily harm.

DC I believe his testimony was he did not remember.

MJ Well, he must remember. He must— if he got up here and testified, "The reason I popped this fellow and did what I did is I felt he was about to beat me up badly and I felt in danger of death or grievous bodily harm, that's the reason I did what I did." Then you have self-defense. For self-defense for the offense charged, he must have a reasonable belief that he was in danger of death or grievous bodily harm and intoxication has nothing to do with it. He hasn't testified he had any belief, whether it was reasonable or not, that he was in danger of death or grievous bodily harm.

DC Well, sir, I think that's a question of fact left to the providence of the court members themselves.

MJ There must be some evidence upon which they can determine the facts. Tell me what evidence is there that this accused believed that—

DC Well he's already, in fact, received an injury.

MJ Okay. Let me ask the question. What, point out some evidence to me that's been introduced so far that this accused believed that death or grievous bodily harm was about to be inflicted upon him?

DC Well, it had already been inflicted once before.

MJ Death or grievous bodily harm?

DC Well, he'd been hit from behind was his testimony. He had been hit from behind.

MJ Okay, now you're telling me, presuming we can go far enough and overlook

the fact that that's not death, and that's not grievous bodily harm, where is there any evidence that he feared death or grievous bodily harm was about to be inflicted upon him?

DC Well, again, when you look at the testimony of Renee, she was testifying that he was backing away as Sam continued to approach him.

MJ That has nothing to do with his state of mind.

DC I think that his actions indicate his state of mind. We don't always know, you know, what his state of mind was. He says he doesn't remember but I think you can infer from his actions what his state of mind was.

\* \* \* \* \* \*

MJ Okay, I'll tell you what I'm going to do. I'm going to give the accident instruction. I will instruct on simple negligence. I'm not going to instruct on self-defense. I just don't see it there. There's no evidence that I've heard of that this accused felt that he was threatened by either death or serious bodily harm in regard to the offense charged, or that he was threatened with apprehending some bodily harm.

DC Well, sir, how about the situation of self-defense—well, you're not going to go with that either. I'd just like to object on the record that I protest not giving the self-defense instruction. I think there's ample evidence to give that particular instruction.

-------

The military judge refused to give a defense requested instruction on self-defense because *appellant* did not testify that he had any belief that he was in danger of death or on grievous bodily harm. No authority was proffered at trial or on appeal for this purported principle of military law. We reject it to the extent that it suggests this defense may not be based on testimony of witnesses other than the accused. *See Tatum v. United States*, 190 F.2d 612, 615 (D.C.Cir.1951).

Appellant's belief that he was in danger of death or serious bodily injury could be evidenced circumstantially. More particularly, it could be evidenced by proof of circumstances which might bring about such a state of mind. *See United States v. Owens*, 21 MJ 117, 123 n.6 (CMA 1985). *See generally* II Wigmore, *Evidence* § 248 (Chadbourn rev.1979). Also, such a belief could be inferred from evidence of conduct on his part which was probably caused by such a belief. *See United States v. Watkins*, 21 MJ 224, 227 (CMA), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986); *see generally* II Wigmore, *supra* § 265. Finally, it also could be evidenced by his statements out of court after the fact which suggests his earlier state of mind. *See generally* II Wigmore, *supra* § 267. Clearly, witnesses other than appellant could testify to these external facts which might inferentially show his state of mind.

A brief review of the evidence convinces us that an issue of self-defense was at least raised in the present case. First, testimony from several witnesses, including appellant, was proffered that he was struck first. Second, a government witness testified that appellant was retreating and attempting to brandish the broken bottle as if to ward off the victim. Third, and finally, appellant himself was heard to say immediately after the fight that it was self-defense. We need not express an opinion as to the persuasiveness of this evidence; we need only note that the evidence was sufficient to have required the military judge to give an instruction on it. *See Tatum v. United States, supra.*

In this regard, we distinguish the present case from the case of *United States v. Regalado*, 13 USCMA 480, 33 CMR 12 (1963). There, the accused's own testimony undermined any contention that he believed he was in danger of death or serious injury. *Id.* at 485, 33 CMR at 17. *See United States v. Brown*, 13 USCMA 485, 492–93, 33 CMR 17, 24–25 (1963). Here, appellant

testified only that he had no memory of the events in question.

Moreover, this case can be distinguished from *United States v. Duckworth,* 13 USCMA 515, 521, 33 CMR 47, 53 (1963), where this Court noted: "Nothing in the evidence of the prosecution in this case suggests the presence of self-defense." Here, the Government's own witnesses testified to appellant's act of retreating with the bottle and his statements that he acted in self-defense. *See United States v. Hunter,* 21 MJ 240, 242 n.4 (CMA), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2250, 90 L.Ed.2d 696 (1986); *United States v. Sermons,* 14 MJ 350 (CMA 1982); *United States v. Camp-bell,* 13 USCMA 531, 534, 33 CMR 63, 66 (1963). Accordingly, our result in this case must be identical to that reached in *Tatum:*

> The complete absence of instructions by the court on the essential issue of ... [self-defense] requires that the case be reversed and remanded for a new trial.

190 F.2d at 617.

The decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge EVERETT and Judge COX, concur.